IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSAN RAYE KNIGHT,

       Plaintiff,

v.                                                                                                                            CIV 15-0882 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 17*), filed July 13, 2016. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 9*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court will grant the Motion.

**I.    Procedural History**

Plaintiff filed applications with the Social Security Administration for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on July 15, 2011. *AR* at 88-91; 197-212.[1] Plaintiff alleged a disability onset date of December 31, 2009, due to "scoliosis of the lower spine; degenerative disc disease; arthritis; [and] menstrual migraines." *AR* at 92, 100. Prior to claiming disability Plaintiff worked as a clerical worker, a bartender, a waitress, a manager of a

---

[1] Documents 13-1 through 13-14 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

gift shop, and a counter helper/sales person at a sign supply company. *AR* at 76. Plaintiff testified that she stopped working at this final position (at a family business) because she was excessively calling and coming in late because of her conditions. *AR* at 51-52.

      The agency denied Plaintiff's claims initially and upon reconsideration, and she requested a hearing. *AR* at 88-129. After a *de novo* hearing, Administrative Law Judge Frederick Upshall Jr. ("the ALJ") issued an unfavorable decision on April 7, 2014. *AR* at 20-37. Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on July 31, 2015. *AR* at 1-3, 13-16. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

      A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

      At Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 22. At Step Two, he determined that Plaintiff had the severe impairments of "degenerative disc

disease, scoliosis of the lumbar spine, migraine headaches, osteoarthritis, and an Adjustment Disorder. . . ." *AR* at 23. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 23-25.

When a plaintiff does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(a)(4). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of her medical impairments. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). In this case the ALJ determined that Plaintiff retained the RFC to

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she requires a sit/stand option allowing her to sit or stand alternatively at will, with the maximum length of time that she is able to sit or stand at one time being 30 to 45 minutes. No climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs. Occasional stooping, crouching, kneeling, and crawling. Occasional reaching and overhead reaching with the left upper extremity. Only occasional interaction with the public that is incidental to the work performed. She is limited to simple, unskilled work.

*AR* at 26. Employing this RFC at Steps Four and Five, the ALJ determined that Plaintiff was unable to perform her past relevant work. *AR* at 35. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform; specifically, the ALJ determined that Plaintiff maintains the RFC to work as an assembly worker, a garment sorter, and a wire cutter stripper. *AR* at 35-36. Accordingly, the ALJ determined that Plaintiff was not disabled from her alleged onset date through the date of his decision, and denied benefits. *AR* at 47.

**II.     Legal Standard**

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

**III.    Analysis**

*A.  Dr. Owen's Opinion*

There was little evidence pertaining to Plaintiff's mental health in the record prior to the hearing before the ALJ, which took place on June 13, 2013. *AR* at 44. In fact, Plaintiff testified at the hearing that she had not received treatment for any mental or emotional health issues – although her sisters recommended that she do so – due to her lack of insurance. *AR* at 69. Given this testimony, the ALJ thought it prudent to send Plaintiff for a consultative psychological examination. *AR* at 20, 82.

Plaintiff was evaluated by John Owen, Ph.D., on September 10, 2013. *AR* at 533. Ultimately, Dr. Owen diagnosed Plaintiff with "Adjustment Disorder with Mixed Anxiety and Depressed Mood. Social Anxiety, provisional." *AR* at 534. In his statement of opinion of abilities Dr. Owen made the following findings:

1. Understand and Remember
   A. Detailed or complex instructions:       mild difficulty
   B. Very short and simple instructions:     no difficulty

2. Sustained Concentration and Task Persistence
   A. Ability to carry out instructions:      moderate to marked difficulty
   B. Ability to attend and concentrate:      moderate difficulty
   C. Ability to persist at tasks:            mild difficulty
   D. Ability to work without supervision:    mild difficulty

4

   3. Social Interactions
      A. Ability to interact with the public:      marked difficulty
      B. Ability to interact with co-workers:    moderate difficulty
      C. Ability to interact with supervisors:   moderate difficulty

   4. Adaption
      A. Ability to adapt to changes in the workplace: moderate difficulty
      B. Ability to use public transportation:     mild difficulty

*AR* at 535.

      The ALJ discussed Dr. Owen's opinion in detail by reciting the historical facts relayed to him by Plaintiff and then restating almost verbatim his assessment of her mental status. *See AR* at 29-30. The ALJ then noted Plaintiff's results on the Mini-Mental State Examination, and Dr. Owen's diagnoses. *AR* at 30. However, the ALJ's discussion of Dr. Owen's statement of opinion of abilities was restricted to the following: "Based on his examination, Dr. Owen thought the claimant would have moderate to marked difficulty carrying out instructions and marked difficulty interacting with the public." *AR* at 30. In other words, the ALJ failed to note Dr. Owen's findings that Plaintiff would have moderate difficulties in four other areas of ability. *AR* at 30.

      The ALJ "placed great weight on the opinions expressed by Dr. Owen in his consultative report." *AR* at 35. The ALJ also limited Plaintiff's RFC based upon the marked limitations found by Dr. Owen:

> Based on his opinion that claimant would have limitations with respect to carrying out instructions and attending and concentrating I have limited the claimant to simple, unskilled work. Additionally, based on his opinion that claimant would likely have limitations dealing with the public I have limited claimant to occasional interaction with the public, incidental to the work being performed.

*AR* at 35.

Plaintiff argues that it was error for the ALJ to omit mention of her moderate limitations when formulating her RFC, despite giving Dr. Owen's opinion "great weight." *Doc. 17* at 10-11. Plaintiff further argues that the ALJ's RFC restrictions inadequately accounted for the marked limitations that Dr. Owen found.

### 1. Moderate Limitations

The Tenth Circuit has held that it is reversible error for an ALJ to reject moderate limitations in an otherwise uncontradicted medical opinion. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The question, therefore, is whether the ALJ's RFC adequately accounted for the moderate limitations identified by Dr. Owen.

The Commissioner argues that it does. *Doc. 18* at 6-9 ("Although the ALJ did not specifically address the remainder of the moderate limitations indicated by Dr. Owen, they were accommodated by the residual functional capacity."). The Commissioner's argument thus assumes that a restriction to simple, unskilled work accommodates Plaintiff's moderate difficulties in her abilities to attend and concentrate, interact with her co-workers and supervisors, and adapt to changes in the workplace. *AR* at 535. Plaintiff, on the other hand, argues that it cannot because "this limitation fails to clarify to a meaningful degree the functional limitations to which it refers," relying on *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012), and *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished).

In *Chapo*, the Tenth Circuit noted that restriction of a claimant to unskilled work may insufficiently account for impairment of mental functions "which 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Chapo*, 982 F.3d at 1290, n.3 (quoted authority omitted); *see also Vigil*, 805 F.3d at 1204 (citing this footnote for

6

the proposition that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations."). However, since *Chapo* the Tenth Circuit has not taken such a restrictive approach, holding in a published decision that a restriction to unskilled work adequately accounted for a claimant's moderate limitations in concentration, persistence, and pace. *Vigil*, 805 F.3d at 1204 ("The evidence in the record regarding Vigil's mental status supports the ALJ's RFC determination that limiting Vigil to perform unskilled work would adequately account for his moderate limitations in concentration, persistence, and pace."). *Vigil* thus casts doubt upon Plaintiff's reliance on *Wiederholt*, an unpublished decision.

Additionally, while the Tenth Circuit in *Wiederholt* stated that "the relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the ALJ's additional, more specific findings regarding Ms. Wiederholt's mental impairments[,]" which included "moderate difficulties in maintaining concentration, persistence, or pace," *Wiederholt*, 121 F. App'x at 839, this was not the court's holding. Rather, the case was reversed and remanded because the ALJ failed to include RFC limitations he had found in the hypothetical to the vocational expert. *Id.* Thus, *Wiederholt* does not resolve the issue.

In opposing Plaintiff's Motion, the Commissioner relies upon *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. 2015) (unpublished), for the proposition that "a limitation to performing simple tasks accommodated a moderate limitation in the ability to maintain attention and concentration for extended periods." *Doc. 18* at 6. However, that case affirmed an ALJ's incorporation of a medical provider's Section III findings on a Mental

Residual Functional Capacity Assessment ("MRFCA") form,[2] where the Section I findings were omitted. Thus, while the case stands for the proposition that a moderate limitation on the ability to maintain attention and concentration for extended periods in Section I of a MRFCA is adequately encompassed in a restriction to simple tasks, the Court is not convinced that *Lee* resolves the issue, either, as Dr. Owen did not fill out an MRFCA form in this case.

*Nelson v. Colvin*, ___ F. App'x ____, No. 15-6226, 2016 WL 3865856, at *2 (10th Cir. July 12, 2016) (unpublished), is the most recent Tenth Circuit case to address this issue. While *Nelson* involved the use of an MRFCA form and explored the distinction between Sections I and III of that form, the Tenth Circuit's focus was ultimately on whether the ALJ's limitation of the claimant to unskilled work effectively accounted for moderate and marked limitations noted in Section I. The court held that it did. *Nelson*, 2016 WL 3865856 at *2 ("More to the point, by limiting Ms. Nelson to unskilled work, the ALJ effectively accounted for *all* the limitations noted in Section I of Dr. Taber's evaluation."). The Court began by examining the requirements of unskilled work:

> Unskilled work generally requires only the following: (1) 'understanding, remembering, and carrying out simple instructions'; (2) making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions'; (3) responding appropriately to supervision, co-workers and usual work situations'; and (4) 'dealing with changes in a routine work setting.'

*Id.*, at *2 (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)). The Court then reasoned that, under this definition, unskilled work does not require the ability to

---

[2] The Tenth Circuit recently clarified that, where a MRFCA form is used, adjudicators are to rely primarily upon a medical provider's conclusions in Section III of the form, rather than the limitations noted in Section I. *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016). Unfortunately, Dr. Owen did not fill out a proper MRFCA form in this case, so case law construing the use of such forms is of limited utility.

8

maintain attention and concentration for extended periods, which is one of the moderate limitations found by Dr. Owen, here. *AR* at 535. Thus, *Nelson* makes clear that the ALJ's limitation of Plaintiff to unskilled work adequately accounts for her moderate difficulty in her ability to attend and concentrate.

This leaves the moderate difficulties in Plaintiff's abilities to interact with her co-workers and supervisors, and her ability to adapt to changes in the workplace. Unlike her ability to attend and concentrate, these three areas are required for the successful completion of unskilled work. *Nelson*, 2016 WL 3865856 at *2 (noting that unskilled work requires responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting); *see also* POMS DI 25020.010(a)(3) *available at* <https://secure.ssa.gov/poms.NSF/lnx/0425020010> (listing the mental demands of unskilled work and stating that "a substantial loss of ability" to meet any of these demands "severely limits the occupational base and thus, would justify a finding of inability to perform other work even for persons with favorable age, education and work experience.").[3] However, recent case law compels the Court to conclude that by limiting Plaintiff to simple work the ALJ adequately accounted for these limitations.

The Commissioner relies on *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015) (unpublished) and *Conkle v. Astrue*, 487 F. App'x 461, 462-63 (10th Cir. 2012) (unpublished)). *Carver* is another MRFCA case, so its holding is again of limited utility. There the Tenth Circuit held that a moderate limitation on the claimant's ability to

---

[3] "POMS" stands for Program Operations Manual System, which is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). Courts in the Tenth Circuit "defer to the POMS provisions unless we determine they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

9

"accept instructions and respond appropriately to supervisor criticism" was adequately accounted for in a RFC limiting the claimant to interacting with supervisors under "routine" supervision over simple work. 600 F. App'x at 619-20. Thus, implicit in *Carver* is the notion that a restriction to simple work may adequately address a moderate limitation on the ability to interact with supervisors.

In *Conkle*, the claimant asserted that her RFC, "which allowed for light work limited to simple instructions and no more than incidental work with the public, precluded the ALJ's use of the grids due to her non-exertional impairments." 487 F. App'x at 462. The Tenth Circuit disagreed, observing that the claimant's non-exertional impairments (simple work and no more than incidental work with the public) "do not significantly erode the occupational base for light work because the basic mental demands for such unskilled work comport with the limiting effects of her impairments." *Id.* (citations omitted). As the Commissioner points out, in making this finding the Tenth Circuit cited to 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g) for the proposition "that in the category of light work, 'the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people).'" *Id.* While this observation is useful in the context of a restriction on working with the public, the Court is not convinced that the same rationale applies to interacting with supervisors and co-workers, which, as explained above, are essential to the performance of unskilled work.

Nonetheless, the Tenth Circuit's recent decision in *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016), forecloses Plaintiff's argument that a limitation to simple tasks could not adequately address her moderate difficulties in these areas. In *Smith*, the psychologist noted a moderate limitation in the claimant's ability to, among other

things, "accept instructions and respond appropriately to criticism by supervisors," "get along with coworkers or peers without distracting them or engaging in behavioral extremes," and "respond appropriately to changes in the workplace." *Id.* at 1268. The ALJ did not parrot these limitations, instead concluding that the claimant "could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit held this to be sufficient, holding that "[t]hrough these findings, the administrative law judge incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments." *Id.* Thus, under *Smith*'s rationale, the Court is constrained to find that here the moderate limitations identified by Dr. Owen were adequately addressed by the ALJ's decision to limit Plaintiff's RFC to simple, unskilled work.

### *2. Marked Limitations*

Plaintiff argues that the ALJ implicitly rejected the marked limitation on her ability to interact with the general public because the ALJ only limited her to "occasional" interaction with the public. *Doc. 17* at 11, n.8. The question is thus whether "occasional interaction with the public, incidental to the work being performed" adequately accounts for Plaintiff's marked difficulty in her "ability to interact with the public." Plaintiff argues it does not, relying on POMS DI 24510.063(B)(3). *Doc. 23* at 3. Under this section of the POMS, a marked limitation should be noted on Section I of a MRFCA form "when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." *Id. available at* <https://secure.ssa.gov/poms.nsf /lnx/0424510063>.

Even taking this definition into account, the Court finds that the ALJ's formulation of Plaintiff's RFC adequately accounted for her marked inability to interact with the general public for two reasons. First, the limitation to only occasional interaction with the

11

general public has been implicitly recognized, in context, as adequately addressing a claimant's "marked to extreme" limitation on that ability in a prior case. *See Chapo*, 682 F.3d at 1290-92. Moreover, in this case, the ALJ limited Plaintiff to unskilled work. *AR* at 26. As noted above,

> Unskilled work generally requires only the following: (1) 'understanding, remembering, and carrying out simple instructions'; (2) making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions'; (3) responding appropriately to supervision, co-workers and usual work situations'; and (4) 'dealing with changes in a routine work setting.'

*Nelson*, 2016 WL 3865856, at *2 (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)). Under this definition, unskilled work does not require *any* interaction with the general public, much less that which is "occasional" and "incidental to the work being performed." *Id.* ("Even though Dr. Taber noted marked limitations in Ms. Nelson's ability to . . . interact appropriately with the public, unskilled work does not require these abilities[.]"). Accordingly, even if the ALJ's limitation of Plaintiff to only occasional interaction which is incidental to the work being performed inadequately addresses this marked impairment, the ALJ rectified this error by his further determination that she be limited to unskilled work, which does not require this ability.

This does not end the inquiry. Plaintiff further argues that Dr. Owen's finding of a moderate to marked difficulty in her ability to carry out instructions "*precludes* performing unskilled work." *Doc. 23* at 4 (emphasis in original). Thus, the question is whether the ALJ's decision to limit Plaintiff to simple, unskilled work sufficiently accounted for Dr. Owen's opinion that she would have moderately to markedly difficulty carrying out instructions. The Court finds that this limitation was insufficient.

The Tenth Circuit addressed a similar set of facts in *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014) (unpublished). There, the ALJ restricted the claimant to simple, routine, repetitive, and unskilled work in an effort to accommodate, among other things, a psychologist's finding that the claimant would be moderately limited in the ability to carry out instructions. *Id.* at 876. As in *Nelson*, the Tenth Circuit examined the requirements of unskilled work, and held that none of the basic mental abilities of unskilled work captured the moderate limitation on the claimant's ability to carry out instructions. *Id.* The court also rejected the notion that the ALJ addressed this limitation by limiting the claimant to simple work. *Id.*

The Commissioner counters that *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), rejected "Plaintiff's argument that a limitation to unskilled work cannot accommodate severe mental impairments." *Doc. 18* at 9. While this proposition is generally true, *Vigil* is not controlling here. First, the *Vigil* court did not address the same limitation as is at issue here. *Id* at 1203-04. Second, in *Vigil*, the ALJ not only limited the claimant to unskilled work, but further limited him to a SVP of only one or two. *Id.* at 1204. Third, the *Vigil* court recognized the requirements of unskilled work, noting that it only requires carrying out *simple* instructions. *Id.* In contrast, Dr. Owen made no distinction in this case between simple versus complex instructions. Had he done so, the Court might be inclined to find for the Commissioner. *See Shawbaker v. Colvin*, No. 15-9139-SAC, 2016 WL 3031095, at *4 (D. Kan. May 27, 2016) (distinguishing *Jaramillo* because the claimant was considered moderately limited in her ability to carry out *detailed* instructions, as opposed to all instructions); *see also Whelan v. Colvin*, No. CIV-15-129-R, 2016 WL 562871, at *8 (W.D. Okla. Jan. 22, 2016), report and

recommendation adopted, No. CIV-15-129-R, 2016 WL 593835 (W.D. Okla. Feb. 12, 2016) (same). Finally, as noted above, *Vigil* cites *Chapo* for the proposition that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id.* For the reasons described above, this is one of those cases.

In this case, Dr. Owen opined that Plaintiff would have moderate to marked difficulties in carrying out instructions. As in *Jaramillo*, the ALJ in this case attempted to account for this difficulty by limiting Plaintiff to simple and unskilled work. *AR* at 35. However, as the Tenth Circuit recognized in *Jaramillo*, none of the basic mental abilities of unskilled work captures the moderate to marked limitation on Plaintiff's ability to carry out instructions. 576 F. App'x at 876. Thus, remand is required for the ALJ to adequately address Plaintiff's moderate to marked difficulty in carrying out instructions, or to clarify with Dr. Owen whether this limitation is limited to complex tasks, or if it also extends to simple ones.[4]

### B. Plaintiff's Other Claims of Error

Plaintiff also argues that the ALJ erred by failing to consider the limiting effects of her dermatitis at Steps Two and Three of the sequential evaluation process, failed to properly evaluate her credibility, and failed to apply the correct legal standard in evaluating the third party statements of her friend, Peggy Brown. *See Doc. 17* at 3-19. The Court will not address these issues at this time "because they may be affected by

---

[4] The Court admits that it is somewhat distressed to reach this result, as Dr. Owen's findings would not even have been part of the record had the ALJ not referred Plaintiff to him for a consultative examination. The Court applauds the ALJ for attempting to comply with the letter and spirit of the regulations by developing the record in this manner. As noted in footnote 2, had Dr. Owen completed a proper MRFCA form the reversible error in this case may have been avoided under recent precedent. *See Smith*, 821 F.3d at 1269 n.2. Nonetheless, the ALJ's legal error requires remand under *Jaramillo* for the reasons explained above.

14

the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. Conclusion

The Court finds that Plaintiff's motion to remand is well-taken and that this matter should be remanded for reevaluation of Plaintiff's RFC in light of Dr. Owen's finding that she would have moderate to marked difficulties in carrying out instructions.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (*Doc. 17*) is **granted**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE